**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LELAND L. COGDELL, JR.<br>6030 Daybreak Circle, #A-150, #172<br>Clarksville, MD 21209<br><br>                    Plaintiff,<br><br>           v.<br><br>Emily W. Murphy, Administrator<br> U.S. General Services Administration<br>1800 F St., NW<br>Washington, DC 20405<br><br>                    Defendant, | Civil Action No.<br><br>**Jury Trial Demanded** |

**COMPLAINT**

Plaintiff, Leland L. Cogdell, Jr., by way of his counsel, Morris E. Fischer, Esq., hereby submits this federal complaint in violation of the Rehabilitation Act, 42 U.S.C. § 12101, et seq.

**PARTIES**

1. Plaintiff, Leland L. Cogdell, Jr., is a former employee of the U.S. General Services Administration ("GSA") Agency.

2. Defendant is Administrator, General Services, named in her official capacity pursuant to 42 U.S.C. § 2000e-16.

3. Defendant does business and is located in the District of Columbia.

1

4. Defendant is properly named as the head of the Agency pursuant to 42 U.S.C. § 2000e-16(c).

## JURISDICTION

5. This action arises under the Rehabilitation Act, 42 U.S.C. § 12101, *et seq.*, which prohibits discrimination against disabled employees.

6. Defendant does business at 1800 F Street, NW, Washington, DC 20405.

7. All of the necessary administrative prerequisites have been met prior to filing the instant action, as Plaintiff has filed timely complaints of discrimination and retaliation with his federal employer, and more than 180 days have passed since the filing.

8. Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e–5 & –16 (2012).

9. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

10. Therefore, this court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

## FACTS

11. Plaintiff is a male, who suffers from a number of disorders, including, but not limited to: Autism Spectrum Disorder; a rather severe Learning Disability; Posttraumatic Stress Disorder ("PTSD"); Attention-Deficit/Hyperactivity Disorder – Predominately Inattentive Presentation (ADHD-PIP); anxiety/panic disorder; obsessive compulsive disorder, mixed personality disorder; adjustment disorder; Hypertension; Hypercholesterolemia; and severe-obstructive sleep apnea.

-3-

12. Plaintiff has substantial limitations to his major life activities, including, but not limited to: racing and repetitive thoughts, sleep deprivation, heightened level of security and safety and sensitivity to light, noise, large numbers of people, and difficulty in concentrating.

13. Plaintiff was formally hired as an employee by GSA in July 2001, as a GS-12 Program Analyst.

14. Plaintiff's duties included writing and editing award nominations and other documents, market research, and strategic planning.

15. Plaintiff officially worked for GSA from July 29, 2001 to February 29, 2016

16. Plaintiff notwithstanding his disabilities was able to perform the essential functions of his positions with accommodations, and had an excellent record of such.

17. Plaintiff was a qualified individual with a disability.

18. Plaintiff had a history of receiving both satisfactory and excellent duty performance appraisals.

19. Plaintiff had a long history of being passed over for promotional opportunities starting in 2004, due to his disabilities.

20. In November 2006, GSA denied Plaintiff's request for reasonable accommodation on an interim and permanent basis.

21. In 2010, an EEOC Administrative Judge issued two findings against GSA, in favor of Plaintiff, in that GSA had failed to reasonably accommodate Plaintiff and that GSA had retaliated against Plaintiff.

22. Following the aforesaid findings, beginning in April 2014, Plaintiff was required to be present at the office one day per pay period. He could telework the remaining days, which complied with the EEOC's order of four days a week of telework.

23. In 2014, Plaintiff's Cognitive Therapist, Dr. Catherine K. Lee, PhD, established new diagnoses of ADHD-PIP and PTSD.

24. Plaintiff's aforesaid Doctor informed GSA of said diagnoses.

25. In April 2014, David Lee Wycinski, Jr. became Plaintiff's first-line supervisor.

26. In April 2014, Mafara Lynn Hobson was Plaintiff's second-line supervisor.

27. Plaintiff took Family and Medical Leave Act-covered leave ("FMLA") in April, May, June, and December 2014.

28. While on FMLA leave in May 2014, Job Vacancy Announcement Number 1400184CJMP was published.

29. GSA had a number of Agency policies advising that while Plaintiff was out on FMLA, they inform Plaintiff of the aforesaid opportunity in an alternative manner, other than sending the VAN to his work email address.

30. These policies include GSA's Human Capital Vision Skilled Employees in the Right Jobs, at the Right Time Focused on the Right Work and Doing it Right, GSA Core Values, 2011 GSA Administrator's EEO Policy Statement, 2013 Acting Administrator's EEO Policy Statement and GSA Diversity and Inclusion Strategy Plan.

31. GSA did not follow any of the aforesaid policies with respect to the subject VAN opportunity.

32. Plaintiff's supervisor, Wycinsky was responsible for notifying Plaintiff about the said VAN opportunity.

33. Plaintiff's supervisor, Wycinsky was clearly aware that Plaintiff desired to be promoted and he knew that he was a member of the special and separate program for Persons With Targeted Disabilities.

34. Plaintiff's supervisor, Wycinsky has acknowledged that Plaintiff was indeed qualified for this GS-14 promotion.

35. Plaintiff was originally hired by GSA as a Person With a Targeted Disability ("PWTD").

36. On June 27, 2014, Plaintiff requested a reasonable accommodation.

37. Said accommodation was made through his cognitive therapist, Dr. Catherine K. Lee, PhD.

38. Said accommodation consisted of (1) providing a quiet room to minimize distractions; (2) noise-cancelling headphones; (3) extra time to complete assignments; (4) regular feedback on work product; and (5) a job coach for at least ninety (90) days to help Plaintiff re-acclimate to the work force after his extended sick leave.

39. On or about July 16, 2014, Plaintiff requested counseling as a PWTD, pursuant to Executive Order 13548, "Increasing Federal Employment of Individuals with Disabilities," and encouragement from Dr. Wendell Joice, Plaintiff's supervisor while on his developmental detail in 2010 and 2011, after witnessing his keen interest and intellect around diversity and inclusion issues, especially employing the disabled.

40. Said Executive Order calls for the designated executive (champion) of each agency to arrange "...employment counseling to help match the career aspirations of individuals with disabilities to the needs of the agency."

41. Plaintiff sent written request to HR specialist and PWTD Program Manager Jacques Kirkman.

42. Mr. Kirkman did not respond to Plaintiff's request for counseling under EO 13548.

43. Plaintiff followed up his request with Mr. Kirkman.

44. Upon receiving the follow up request, Mr. Kirkman wrongfully determined that Plaintiff's counseling request was actually a request for a transfer to OHRM and Kirkman simply referred Plaintiff's requests to OHRM.

45. When Plaintiff called Kirkman to check on his counseling request and get updated metrics on the GSA PWD Program and the Separate & Special PWTD Program, for National Disability Employment Awareness Month 2014, Kirkman hung up on Plaintiff, well before the natural end of the conversation.

46. GSA issued a decision on Plaintiff's reasonable accommodation request on September, 16, 2014.

47. GSA's late issuance of said decision was in violation of its own Reasonable Accommodation Policy.

48. GSA policy regarding the issuing of Reasonable Accommodation decisions is, barring difficult or unusual circumstances, the decision should be issued within fifteen (15) days.

49. On August 6, 2014, the first and only teleconference was held regarding the reasonable accommodation request with Plaintiff, Wycinsky, and Octavia Johnson Richardson, the human resources specialist and reasonable accommodation coordinator for Plaintiff's office.

50. During the call, Richardson dismissively told Plaintiff words to the effect of, "I have 100 Ted Cogdells!" when Plaintiff reasonably inquired about what was taking so long to decide the request of June 27, 2014.

51. Richardson raised her voice when she made said comment.

52. The aforesaid reasonable accommodation decision denied the job coach.

53. At the EEOC administrative hearing, Richardson claimed not to know how PWTD is defined, yet she is a senior OHRM employee, former OHRM branch chief of employee relations, and an agency reasonable accommodation coordinator, GS-14.

54. Part of Richardson's HR training with GSA involved PWTD hiring and retention.

55. Dr. Lee opined that the job coach was the most important part of the aforesaid reasonable accommodation request, because a job coach can evaluate a client's strengths and weaknesses, focus on the strength primarily, build upon those and work with the weaknesses to move the client into a way that they have a more structured and effective approach to their day-to-day work.

56. Wycinsky has acknowledged that a job coach was a reasonable request.

57. Rather than a job coach, the agency provided Plaintiff with online training, namely videos, by providing a link to a website.

58. However, that link did not work. Plaintiff brought that information to management's attention, but they never fixed that issue.

59. Dr. Lee opined that someone having the disabilities Plaintiff possesses and watching videos, instead of personal coaching and interaction around the work specifically conducted, is ill-advised, especially when a new job is forced upon the employee that is far outside his skill set, interests, and medical restrictions.

60. Richardson never discussed the reasonable accommodation requests with Dr. Lee or any of Plaintiff's other medical providers.

61. The agency did not provide an interim or temporary accommodation for Plaintiff from the time he made the reasonable accommodation request in June 2014 until the decision in September 2014.

62. The agency could have provided an interim or temporary accommodation for Plaintiff, on a trial basis, from the time he made the reasonable accommodation request in June 2014 until the decision--79 days later--in September 2014.

63. It is agency policy to provide an interim or temporary accommodation for an employee from the time he makes a reasonable accommodation request until the decision is made.

64. Following the decision to deny the job coach portion of the reasonable accommodation, Plaintiff filed two appeals.

65. Both of Plaintiff's appeals regarding the reasonable accommodation request went unanswered, even after receipt was acknowledged via email.

66. Following the reasonable accommodation denial in September 2014, Plaintiff's health conditions worsened.

67. On October 29, 2014, Plaintiff requested full-time telework as an accommodation.

68. In early November 2014, GSA called the Howard County (MD) Police Department to Plaintiff's home because they were allegedly concerned about his welfare and safety having been advised of an alleged suicide note Plaintiff wrote.

69. When the Howard County police officers came to Plaintiff's residence, they did not find him there.

70. As a result of Plaintiff not being at home when the Howard County police arrived, GSA surmised that it must have been a situation of him abusing the employment benefit of unscheduled leave and required him to obtain a medical certification for his one-day November 4, 2014, absence.

71. On November 4, 2014, Wycinsky placed Plaintiff on Administrative Leave.

72. On November 4, 2014, Plaintiff was directed to stay away from the GSA building.

73. In fact, on November 5, 2014, Plaintiff was barred from the workplace.

74. Plaintiff was also barred from a benefit or privilege of employment on that day.

75. On November 4-5, 2014, Plaintiff was not a threat to himself, others, or government property.

76. In March 2013, supervisor Walter Robertson Nicholson improperly ended Plaintiff's developmental detail to the GSA Office of Governmentwide Policy, Alternative Workplace Arrangements Team.

77. At Plaintiff's mid-year review for FY 2014, Mr. Nicholson yelled at Plaintiff, cursed at Plaintiff, and threatened his long federal appointment, and informed him of an imminent Memorandum of Counseling.

78. On or about April 4, 2014, Nicholson forced Plaintiff into a new job of Internal Communications Specialist, requiring almost-daily deadlines.

79. Said job was outside of Plaintiff's skill set, due to his developmental disabilities.

80. Mr. Nicholson, although he forced Plaintiff into a new job outside of his skill set, did not change his position description.

81. This new job was also outside of Plaintiff's medical restrictions.

82. This new job was not assigned with consultation of the members of Plaintiff's medical team members, nor properly negotiated in accordance with the NFFE and GSA negotiated Agreement, dated December 26, 1991, which was applicable and at all times material during Plaintiff's entire time of employment with GSA.

83. On December 7, 2014, Dr. Lee submitted an FMLA-covered leave request for administrative leave or advanced sick leave for Plaintiff to Wycinsky.

84. On December 8, 2014, Plaintiff was in an FMLA status.

85. Plaintiff remained on FMLA status until December 30, 2014.

86. During December 2014, Plaintiff was not provided with information concerning the Voluntary Leave Transfer Program ("VLTP").

87. GSA, through its management chain and/or human resources department, could have provided Plaintiff with information regarding the VLTP.

88. GSA was aware that Plaintiff could have utilized and greatly benefitted from the VLTP to remedy his leave without pay (LWOP) status.

89. As a result, Plaintiff was forced to use 107 hours of LWOP.

90. On December 30, 2014, GSA denied Plaintiff's request for advanced sick leave, even though he met the qualifications found in the Agency's Time and Attendance Manual.

91. GSA denied the advanced sick leave because Plaintiff's managers contended that they weren't convinced that Plaintiff would be returning to work, even though this intention was clearly stated in the December 7, 2014 request.

92. However, Plaintiff did in fact return to work shortly thereafter on December 31, 2014.

93. Plaintiff was placed in an impossible and highly stressful situation, as his character and credibility were under assault. His net pay had been reduced to about $203 per month.

94. Plaintiff worked from December 31, 2014 to January 6, 2015.

95. On January 6, 2015, Wycinski placed Plaintiff back on LWOP.

96. Wycinski did not believe it was proper for Plaintiff to be back at work due to his medical conditions.

97. Plaintiff then sought and received official medical clearance to go back to work on January 8 & 9, 2015.

98. Plaintiff was again on LWOP from January 6, 2015 to January 12, 2015.

99. Plaintiff was unable to work after July 14, 2015.

100. Plaintiff was effectively terminated February 29, 2016.

### COUNT I
### FAILURE TO ACCOMMODATE
### VIOLATION OF THE REHABILITATION ACT

101. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

102. Management denied Plaintiff's reasonable accommodation of a job coach.

103. Management failed to engage in the good-faith interactive process with Plaintiff regarding this reasonable accommodation request.

104. Plaintiff engaged in good-faith discussions during the interactive process with management regarding this accommodation.

105. Said reasonable accommodation was not an undue burden on the Defendant.

106. Plaintiff could have performed his all of his job duties with said accommodation.

107. As a result of Defendant failing to provide said accommodation, Plaintiff could not perform his job duties.

108. Failing to accommodate Plaintiff is discrimination in violation of the Rehabilitation Act of 1973, as amended.

109. The Agency acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

110. Because of this unlawful conduct, Plaintiff suffered anguish, anxiety, fear, helplessness, hopelessness, shock, humiliation, insult, embarrassment, loss of self-esteem, self-

worth, and professional reputation, and other personal damages, and Plaintiff suffered tangible losses.

### COUNT II
### DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

111. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

112. Plaintiff suffered the aforementioned tangible, adverse, employment actions.

113. Plaintiff suffered those actions because of his disability.

114. The Agency took this aforementioned tangible, adverse, employment actions against Plaintiff because of his disability and his persistent opposition to Agency civil rights practices.

115. Employees similarly situated to Plaintiff, who did not have Plaintiff's disability, did not have these tangible, adverse employment actions happen to them.

116. The Agency acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

117. Because of this unlawful conduct, Plaintiff suffered anguish, anxiety, fear, helplessness, hopelessness, shock, humiliation, insult, embarrassment, loss of self-esteem and self-worth, professional reputation, and other personal damages and tangible losses.

### COUNT III
### RETALIATION

118. Plaintiff re-alleges and reincorporates all prior allegations as if fully stated herein.

119. Plaintiff engaged in protected EEO activity by asking for reasonable accommodations.

120. Plaintiff also engaged in protected activity by complaining to the Agency's EEO Office of Civil Rights in 2013-2014.

121. Management was aware of Plaintiff's reasonable accommodation requests.

122. Management was aware that Plaintiff complained to the EEO office.

123. Defendant's employees retaliated against him because Plaintiff engaged in protected activity.

124. Defendant's aforementioned actions that occurred following the protected activity would have dissuaded a reasonable person in Plaintiff's position from engaging in protected activity.

125. Plaintiff suffered substantial, materially adverse actions because of the retaliation.

126. The Agency, through its employees, acted wantonly, willfully, with malice, and with reckless indifference to Plaintiff's civil rights.

127. Because of this unlawful conduct, Plaintiff suffered monetary damages and additionally suffered anguish, anxiety, fear, helplessness, hopelessness, shock, humiliation, insult, embarrassment, loss of self-esteem, self-worth, and professional reputation, and other personal damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

    a. A declaratory judgment that the conduct of the Agency challenged herein was illegal and in violation of the aforementioned laws;

    b. Economic and Compensatory damages in an amount to be proved at trial, including back-pay, front-pay, compensation for past and future pecuniary

and non-pecuniary losses resulting from the unlawful employment practices described herein;

c. All reasonable attorneys' fees, expenses, and costs incurred by Plaintiff; and

d. Such other and further relief, as the Court may deem just.

Date:  August 5, 2019                              Respectfully Submitted,


_____/s/_____
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
DC Bar No. 490369
8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
Attorney for Plaintiff

-15-

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all matters properly tried to a jury.

                                      Respectfully Submitted,

                                      _____/s/_____
                                      Morris E. Fischer, Esq.
                                      Morris E. Fischer, LLC
                                      DC Bar No. 490369
                                      8720 Georgia Avenue, Suite 210
                                      Silver Spring, MD 20910
                                      301-328-7631 Office
                                      301-328-7638 Fax
                                      Attorney for Plaintiff